**Ricky Kamdem-Ouaffo**
**301 Cozzens Court**
**East Brunswick, NJ 08816**
**Tel: 1 732 763 8622**
**E-mail (For ECF):** rickykamer@gmail.com

17cw2810

RECEIVED
SDNY DOCKET UNIT

2017 APR 14  PM 2: 06

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

RICKY KAMDEM-OUAFFO,

Plaintiff,

VS.

BALCHEM COPORATION,

GIDEON OENGA

BOB MINIGER

RENEE McCOMB

Defendants.

Case No.

**Complaint**
**(28 U.S.C. 1331: Federal Question)**

Jury Trial Requested Yes_**X**_ No___

1)  Plaintiff, Ricky Kamdem-Ouaffo, by way of Complaint against Defendants ,

states as follows:

## I.  THE PARTIES

### A.  Plaintiff

2)  The Plaintiff is an individual, citizen of the State of New Jersey, residing at 1

Richmond Street # 2100, New Brunswick NJ, 08901.

3)  As for creed and religion background, the Plaintiff has Islam and Muslim religion

practices as well as practices from other religions.

### B.  Balchem Corporation

4)      Upon information and Belief, Balchem Corporation is a food and pharma

company based in New Hampton, New York.

1

5)      Upon information and Belief its address is 52 Sunrise Park Road, New Hampton, New York, 10958

6)      In April 2015, Balchem Corporation hired Plaintiff to do technology innovation work from its R&D facility in New Hampton, NY.

7)      At the time in April 2015, Balchem Corporation was looking for someone to develop new encapsulation technologies other than what it already had.

8)      Balchem also expected the person to have Analytical instrumentation experience,

9)      Balchem's Chief Science Officer, the late Dr. Bob Dull invited Plaintiff for an informal brainstorming lunch and Plaintiff accepted.

10)     During the lunch Plaintiff learned of their concerns and made several proposals based on his experience in the field of encapsulation and Analytical sciences.

11)     Balchem then decided to make an offer to Plaintiff.

12)     Plaintiff accepted and worked from Balchem's R&D in New Hampton, New York, until he was suddenly terminated for having objected to being subject to discrimination because of his Islam and Muslism religion practices.

### C. Gideon Oenga

13)     Upon information and belief, Gideon Oenga is a Senior Manager of Analytical Laboratory at Balchem Corporation.

14)     This Complaint will be serveD on him at 52 Sunrise Park Road, New Hampton, New York, 10958.

2

15)   During Plaintiff's work at Balchem Corporation, Plaintiff reported to him and regularly communicated his scientific reports to him.

16)   Around mid-May 2016, Gideon Oenga called Plaintiff from his Office and told Plaintiff that Plaintiff must no longer wear a hoodie that he wearing because it was muslim and that Balchem employees have been coming to him asking him about my religion and did not want to see me wearing muslim hoodie.

17)   Plaintiff then requested that he should be allowed to continue to wear his muslim hoodie especially since the Ramadan was approaching.

18)   On May 26, 2016 during a one-on-one meeting with Gideon Oenga, he stated that Plaintiff was insubordinate because he had continued to wear his Islam Muslim hoodie to work.

19)   Plaintiff objected to it and informed him that he was going to report to Human Resources about it.

20)   Gideon Oenga then elevated his voice, stood up to open his office door and asked Plaintiff to take his belongings and go to HR never to return again.

21)   Plaintiff then communicated the incident to Human Resources Manager, Renee McComb and to late Dr. Dull.

22)   Plaintiff felt sick after the incident and was so sick that he went to his physician and was diagnosed with distress reaction to the incidents.

23)   Plaintiff was sick for a week and remained home.

3

24)     Upon information and belief, shortly after Plaintiff too pictures and submitted to Human Resources in objection that his hoodie was banned from the company while others continued to bring and wear their hoodies to work, Gideon Oenga told the Human Resources around August 18 2016 that Plaintiff had taken pictures and videos of Balchem's trade secrets and had divulged them to outside entities.

25)     Such a statement was factually false.

26)     Upon information and belief, Gideon told Balchem Human Resources that Plaintiff took pictures of a cabinet containing trade secret materials and had divulged them to outside sources.

27)     Such a statement was factually false.

28)     Upon information and belief, after Plaintiff started objecting to the ban of his muslim hoodie, Gideon Oenga also reported to Human Resources that Plaintiff had not been able to do the innovation work he was hired to do.

29)     Such a representation was factually false because Plaintiff had invented a new encapsulation technology and encapsulated that no other scientist who had worked for Balchem had been able to do.

30)     As a matter of fact, Gideon Oenga tested the encapsulated products that Plaintiff developed and found that it the encapsulates were effective and surpassed by far any products of that nature on the market place.

4

31)    One of the encapsulated products that Plaintiff developed was Choline Chloride encapsulates.

32)    Choline chloride is very difficult to handle because it is very hygroscopic.

33)    Plaintiff was able to find and develop an encapsulation technology for Choline Chlorine.

34)    Gideon Oenga tested and found in his own tests that the choline chloride that Plaintiff had developed was by far superior to whatever he had seen on the market over his experience in the industry.

35)    Plaintiff stored prototypes of his process and product development work in a cabinet that assigned to Plaintiff when he started working at Balchem.

36)    Plaintiff also used the said cabinet to store small quantities of newly developed prototypes for shelf life observation over time to monitor the physical change of encapsulated materials.

37)    A shelf life observation experience usually includes documenting the appearance of the material by taking pictures/videos.

38)    Often times, even at the request of Gideon Oenga, Plaintiff had taken pictures and videos of his experimental set up and product prototypes and had communicated those pictures and videos to Gideon Oenga.

39)    Upon information and belief Gideon Oenga had on several occasions, shown pictures and videos of Plaintiff's work to senior managers at Balchem Corporation.

40)    Upon information and belief, it was widely known within Balchem Corporation that Plaintiff had successfully brought a new encapsulation technology at Balchem Corporation.

41)    Upon information and belief, once Plaintiff objected to the ban of his Islam muslim hoodie, Gideon Oenga also claimed a his meetings with senior managers that he was the one who brought the one technology and products thereof.

42)    Such a claim was factually false.

43)    As a matter of fact Gideon Oenga was never able to contribute a workable idea to the entire development work that Plaintiff did to bring forth choline chloride encapsulation technology.

44)    Plaintiff asked an attorney for Balchem Corporation whether Balchem Corporation assumed responsibility for Gideon Oenga's employment discrimination actions.

45)    The said attorney did not indicate that Balchem was assuming responsibility for Gideon Oenga' employment discrimination actions, therefore Gideon Oenga is sued here in personal capacity as well as in his capacity with Balchem Corporation.

### D.  Bob Miniger

46)    Upon information and belief, Bob Miniger is a Vice President of Human Resources at Balchem Corporation.

47)    This complaint will be served on him at 52 Sunrise Park Road, New Hampton, New York, 10958.

48)    His participation in the employment discrimination acts alleged herein included, approving that Plaintiff be subject to a Performance Improvement plan after Plaintiff reported the incidents during which Gideon Oenga ordered that Plaintiff must stop wearing his Islam Muslim hoodie do work.

49)    He also made the decision to suspend Plaintiff from work after Plaintiff took pictures and submitted to Human resources as evidence that other employees were allowed to bring and wear their hoodies at work, while Plaintiff's had been banned from the company.

50)    He stated that he was suspending Plaintiff in order to do due his due diligence whether Plaintiff might have taken more pictures showing evidence of employment.

51)    He also made the decision to terminate Plaintiff employment.

### E.   Renee McComb

52)    Upon information and belief, Renee McComb is a Senior Manager of Human Resources at Balchem Corporation.

53)    This complaint will be served on her at 52 Sunrise Park Road, New Hampton, New York, 10958.

54)    Plaintiff reported the incidents with Gideon Oenga to her.

55)    She did not conduct any meaningful investigation of the incidents, rather she tried to find information and to devise cover up.

56)    Plaintiff also informed her around 08/01/2016 that he was filing an employment discrimination with the EEOO office.

57)     Her additional participation in the employment discrimination acts alleged herein included, approving that Plaintiff be subject to a Performance Improvement plan after Plaintiff reported the incidents during which Gideon Oenga ordered that Plaintiff must stop wearing his Islam Muslim hoodie do work.

58)     She also made the decision to suspend Plaintiff from work after Plaintiff took pictures and submitted to Human resources as evidence that other employees were allowed to bring and wear their hoodies at work, while Plaintiff's had been banned from the company.

59)     She stated that he was suspending Plaintiff in order to do due her due diligence whether Plaintiff might have taken more pictures showing evidence of employment.

60)     She also made the decision or supported the decision to terminate Plaintiff employment.

61)     She called Plaintiff on 08/22/2016 to inform Plaintiff along with Bob Miniger that Plaintiff's employment was terminated.

## II. SUBJECT MATTER JURISDICTION AND VENUE

62)     This action arises under the Equal Employment Opportunity Act Title VII of the Civil Rights Act of 1964, as amended.

63)     The Plaintiff alleges creed and religion based employment discrimination, wrongful termination, retaliation, and refuse to hire committed by Balchem Corporation and co-defendants against the Plaintiff.

64)     The EEO Act Title VII Section 706(f) states:

8

*"...Each United States District Court and each United States Court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this title. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the plaintiff would have but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action maybe brought within the judicial district in which the respondent has his principal office..."*

65)    This action is brought by the aggrieved party under the EEO Act Title VII of the Civil Rights Act of 1964, as amended, against Balchem Corporation and co-defendants who are based in New Hampton, New York.

66)    Plaintiff alleges that around the month of May of 2016, as the beginning of the month Ramadan approached, Plaintiff wore a hoodie to the laboratory where he worked in New Hampton New York.

67)    Around Mid-May 2016, the Laboratory manager, Gideon Oenga, then called Plaintiff from his Office and said to Plaintiff that Plaintiff must stop wearing his muslim hoodie to work because nobody at Balchem liked to see it.

68)    About two weeks later, Plaintiff was savagely harassed during a one-on-one weekly meeting in Gideon Oenga' Office for having continued to wear his muslim hoodie.

69)    Plaintiff reported the incidents to Human Resources Managers Renee McComb and to the Chief Science Officer.

70)    Plaintiff also felt very sick.

71)     Upon returning to work, Plaintiff was required by the VP of HR Bob Miniger, along with the R&D Managers to sign a performance improvement plan and to stop wearing his hoodie to work.

72)     Plaintiff objected to the said performance enhancement plan as they contained several factually false statements against Plaintiff, however consented to signing on any requirement that reflected company's code of conduct.

73)     The VP of HR Bob Miniger then highlighted in yellow color those sections that he believed to be standard Company's code of conduct.

74)     Plaintiff then initialed those sections and R&D R&D Manager Gideon Oenga also initialed the same, and Bob Miniger signed at the bottom.

75)     Plaintiff complied with the requirements of the performance Improvement Plan.

76)     Plaintiff however informed the HR manager that he had been very concerned for being singled out for PIP while he had brought new technologies Platform for the companies in a relatively short time.

77)     Plaintiff worked on developing new technologies and around the same time analytical testing of products of the process had shown that Plaintiff was able to develop encapsulates that no scientist who worked for Balchem was ever able to do.

78)     Plaintiff named the technologies "HBDS"

79)   Plaintiff applied for merit based promotion, but was denied, although I the mean time other people who have done no significant achievements were getting promotions and new offices.

80)   On or around 08/17/2016, Plaintiff decided to formally document the fact that since the ban of his hoodie by the Company, other co-workers had all along being bringing and to wear hoodies in the laboratory and workplace.

81)   Plaintiff then took a couple of pictures of the hoodies and submitted them Human Resources Managers by e-mail with comments that his hoodie had been officially banned while all other coworkers were allowed to bring their hoodies in the workplace.

82)   Plaintiff used his cell phone to take the pictures that he submitted to HR manager Rene McComb.

83)   On numerous occasions Plaintiff had used the same cell phone in the laboratory, even at the request of R&D Supervisors, to take pictures and videos of processes and products that Plaintiff had been working on as Plaintiff's as the laboratory had no video recording device.

84)   Pictures or videos taken by Plaintiff were downloaded and saved on company's computers.

85)   Shortly after communicating the hoodies pictures to HR managers, Plaintiff was then summoned at the HR Office and was accused of having stolen companies trade secrets and for having violated recording policy.

86)     During the said HR meeting in the HR Office, the VP of HR Bob Miniger informed Plaintiff that they had made the decision to suspend Plaintiff in order to investigate whether Plaintiff might have more evidence against them.

87)     Plaintiff asserted that he had taken the pictures to show evidence to HR that he was singled out for hoodie ban while others were allowed to bring theirs to work and that he continued to object to the fact that his hoodie had been banned on the basis of creed and religion.

88)     They then asked Plaintiff to go home and wait for the outcome of the investigation.

89)     On 08/01/2016, Plaintiff initiated and filed a discrimination and retaliation complaint with the EEOC (See Attachment I).

90)     On 08/17/2016, Plaintiff transferred his discrimination and retaliation complaint to the New York Division of Human Rights.

91)     The New York Division of Human Rights docketed Plaintiff's complaint on 08/19/2016 and notified Plaintiff of the same (Attachment II).

92)     On the same day 08/19/2016, in the late afternoon, Balchem Corporation suspended Plaintiff and expelled Plaintiff from workplace.

93)     On 08/22/2016, the VP of HR Bob Miniger and HR Manager Rene McComb then called Plaintiff to inform Plaintiff that Plaintiff was terminated effectively immediately.

94)     The Human Rights Division then started an investigation of the allegations.

95)     Balchem Corporation then filed an answer to the allegations with request that Plaintiff's discrimination charge be dismissed (See ATTACHMENT V).

96)     Then came a point when Plaintiff provided the Human Rights division with information on specific evidence that the Human Rights Division should obtain from Balchem Corporation and account for in its findings.

97)     The Human Rights Division then requested the identified evidence from Balchem Corporation.

98)     Balchem Corporation refused to produce the discovery sought.

99)     For example, the Human Rights Division asked to produce a copy of plaintiff's performance evaluation for the year 2015/2016, but they declined.

100)     The said performance evaluation would have shown that Plaintiff performance at met expectations.

101)     The Human Rights Division also asked them copies of e-mails in which Plaintiff expressed grievance over the ban of his muslim hoodie, but Balchem corporation declined to produce the requested evidence.

102)     The Human Division then sent Human Rights Division then sent Notices that if Balchem Corporation did not produce the discovery sought, then Plaintiff may be entitled to seek remedy in Federal Court, but Balchem Corporation still did not produce the discovery sought.

103)     Plaintiff then applied for an order of Administrative Dismissal for Convenience Human Rights Division.

104)   The Human Rights Division granted Plaintiff's application for Administrative dismissal to allow Plaintiff to proceed to Court to obtain justice Human Rights Division.

105)   Defendant did not appeal the Order of Administrative Dismissal.

106)   Plaintiff then sought the Notice of Rights to sue from the EEOC and the upheld the Human Division decision Order and accordingly issued Notice Of Rights To Sue to Plaintiff on 01/20/2017 (See ATTACHMENT III).

107)   Plaintiff alleges that the events briefly narrated above demonstrated creed and religion based employment discrimination and retaliation.

108)   In view of all the above and on the basis of the EEO Act Title VII Section 706(f), the United States District Court for the District of New York has Jurisdiction over this action and is also the proper venue.

109)   Since the sudden termination of the Plaintiff's employment by Defendants, the Plaintiff has been unemployed and has lost wages and benefits

110)   It is a requirement that an employee who feels that he/she has been victim of creed or religion based unlawful employment practices must first file a Complaint with the EEOC and the Human Rights Commission.

111)   The Plaintiff complied with the laws and filed a discrimination complaint with the U.S. Equal Employment Opportunity Commission (EEOC Charge No. 16GB603921 and 16GB04020) through the work sharing agreement with the New York Division of Human Rights (cases # 10183250, and 10183369 respectively ), as can be seen in "ATTACHMENT II and III".

112)    The EEOC allows 90 days to file a lawsuit once the Notice of Right to Sue has been issued.

113)    The Notice of Right to Sue Balchem Corporation was issued by the Commission on 01/20/2017, and the Plaintiff has prepared and filed this lawsuit within the 90 days statutory time after issuance of Notice of Right to Sue

114)    Therefore the Plaintiff has met the requirements to commence this lawsuit in the Federal Court and this lawsuit is timely.

115)    In view of all the above, the United District Court for the District of New York has jurisdiction and is the proper venue for this action in which the Plaintiff is alleging, inter alia, violation of the EEO Act Title VII of the Civil Rights Act of 1964, as amended.

116)    The lawsuit is timely and is supported by "Notice of Rights to Sue" Balchem Corporation.

## FACTUAL BACKGROUND

117)    Around Mid-May 2016, the Laboratory manager, Gideon Oenga, then called Plaintiff from his Office and said to Plaintiff that Plaintiff must stop wearing his muslim hoodie to work because nobody at Balchem liked to see it.

118)    About two weeks later, Plaintiff was savagely harassed during a one-on-one weekly meeting in Gideon Oenga' Office for having continued to wear his muslim hoodie.

119)    Plaintiff reported the incidents to Human Resources Managers Renee McComb and to the Chief Science Officer.

120)   Plaintiff also felt very sick.

121)   Upon returning to work, Plaintiff was required by the VP of HR Bob Miniger, along with the R&D Managers to sign a performance improvement plan and to stop wearing his hoodie to work.

122)   Plaintiff objected to the said performance enhancement plan as they contained several factually false statements against Plaintiff, however consented to signing on any requirement that reflected company's code of conduct.

123)   The VP of HR Bob Miniger then highlighted in yellow color those sections that he believed to be standard Company's code of conduct.

124)   Plaintiff then initialed those sections and R&D R&D Manager Gideon Oenga also initialed the same, and Bob Miniger signed at the bottom.

125)   Plaintiff complied with the requirements of the performance Improvement Plan.

126)   Plaintiff however informed the HR manager that he had been very concerned for being singled out for PIP while he had brought new technologies Platform for the companies in a relatively short time.

127)   Plaintiff had worked on developing new technologies and around the same time analytical testing of products of the process had shown that Plaintiff was able to develop encapsulates that no scientist who worked for Balchem was ever able to do.

128)    Plaintiff applied for merit based promotion, but was denied, although I the mean time other people who have done no significant achievements were getting promotions and new offices.

129)    On or around 08/17/2016, Plaintiff decided to formally document the fact that since the ban of his hoodie by the Company, other co-workers had all along being bringing and to wear hoodies in the laboratory and workplace.

130)    Plaintiff then took a couple of pictures of the hoodies and submitted them Human Resources Managers by e-mail with comments that his hoodie had been officially banned while all other coworkers were allowed to bring their hoodies in the workplace.

131)    Plaintiff used his cell phone to take the pictures that he submitted to HR manager Rene McComb.

132)    On numerous occasions Plaintiff had used the same cell phone in the laboratory, even at the request of R&D Supervisors, to take pictures and videos of processes and products that Plaintiff had been working on as Plaintiff's as the laboratory had no video recording device.

133)    Pictures or videos taken by Plaintiff were downloaded and saved on company's computers.

134)    Shortly after communicating the hoodies pictures to HR managers, Plaintiff was then summoned at the HR Office and was accused of having stolen companies trade secrets and for having violated recording policy.

135)    During the said HR meeting in the HR Office, the VP of HR Bob Miniger informed Plaintiff that they had made the decision to suspend Plaintiff in order to investigate whether Plaintiff might have more evidence against them.

136)    Plaintiff asserted that he had taken the pictures to show evidence to HR that he was singled out for hoodie ban while others were allowed to bring theirs to work and that he continued to object to the fact that his hoodie had been banned on the basis of creed and religion.

137)    They then asked Plaintiff to go home and wait for the outcome of the investigation.

138)    On 08/01/2016, Plaintiff initiated and filed a discrimination and retaliation complaint with the EEOC (See ATTACHMENT I).

139)    On 08/17/2016, Plaintiff transferred his discrimination and retaliation complaint to the New York Division of Human Rights.

140)    The New York Division of Human Rights docketed Plaintiff's complaint on 08/19/2016 and notified Plaintiff of the same (See ATTACHMENT II).

141)    On the same day 08/19/2016, in the late afternoon, Balchem Corporation suspended Plaintiff and expelled Plaintiff from workplace.

142)    On 08/22/2016, the VP of HR Bob Miniger and HR Manager Rene McComb then called Plaintiff to inform Plaintiff that Plaintiff was terminated effectively immediately.

143)    The Human Rights Division then started an investigation of the allegations.

144)   Balchem Corporation then filed an answer to the allegations with request that Plaintiff's discrimination charge be dismissed.

145)   Then came a point when Plaintiff provided the Human Rights division with information on specific evidence that the Human Rights Division should obtain from Balchem Corporation and account for in its findings.

146)   The Human Rights Division then requested the identified evidence from Balchem Corporation.

147)   Balchem Corporation refused to produce the discovery sought.

148)   For example, the Human Rights Division asked to produce a copy of plaintiff's performance evaluation for the year 2015/2016, but they declined.

149)   The said performance evaluation would have shown that Plaintiff performance at met expectations.

150)   The Human Rights Division also asked them copies of e-mails in which Plaintiff expressed grievance over the ban of his muslim hoodie, but Balchem corporation declined to produce the requested evidence.

151)   The Human Division then sent Human Rights Division then sent Notices that if Balchem Corporation did not produce the discovery sought, then Plaintiff may be entitled to seek remedy in Federal Court, but Balchem Corporation still did not produce the discovery sought.

152)   Plaintiff then applied for an order of Administrative Dismissal for Convenience Human Rights Division.

153)    The Human Rights Division granted Plaintiff's application for Administrative dismissal to allow Plaintiff to proceed to Court to obtain justice Human Rights Division.

154)    Defendant did not appeal the Order of Administrative Dismissal.

155)    Plaintiff then sought the Notice of Rights to sue from the EEOC and the upheld the Human Division decision Order and accordingly issued Notice Of Rights To Sue to Plaintiff on 01/20/2017 (See ATTACHMENT III).

156)    Plaintiff alleges that the events briefly narrated above demonstrated creed and religion based employment discrimination and retaliation.

157)    Since the sudden termination of the Plaintiff's employment by Defendants, the Plaintiff has been unemployed and has lost wages and benefits

158)    The Plaintiff complied with the laws and filed a discrimination complaint with the U.S. Equal Employment Opportunity Commission (EEOC Charge No. 16GB603921 and 16GB04020) through the work sharing agreement with the New York Division of Human Rights (cases # 10183250, and 10183369 respectively), as can be seen in "ATTACHMENT II and III".

159)    The Notice of Right to Sue Balchem Corporation was issued by the Commission on 01/20/2017, and the Plaintiff has prepared and filed this lawsuit within the 90 days statutory time after issuance of Notice of Right to Sue.

## PROCEDURAL HISTORY AND THE PLAINTIFF'S PRIMA FACIE SHOWING AT NEW YORK DIVISION OF HUMAN RIGHTS AND AT THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

160)    It is a requirement that allegations of unlawful employment discrimination that are based on creed and religion must initially be filed with the EEOC and the New York Division of Human Rights.

161)    On 08/01/2016, Plaintiff initiated and filed a discrimination and retaliation complaint with the EEOC (See Attachment I).

162)    On 08/17/2016, Plaintiff transferred his discrimination and retaliation complaint to the New York Division of Human Rights.

163)    The New York Division of Human Rights docketed Plaintiff's complaint on 08/19/2016 and notified Plaintiff of the same (Attachment II).

164)    On the same day 08/19/2016, in the late afternoon, Balchem Corporation suspended Plaintiff and expelled Plaintiff from workplace.

165)    On 08/22/2016, the VP of HR Bob Miniger and HR Manager Rene McComb then called Plaintiff to inform Plaintiff that Plaintiff was terminated effectively immediately.

166)    The Human Rights Division then started an investigation of the allegations.

167)    Balchem Corporation then filed an answer to the allegations with request that Plaintiff's discrimination charge be dismissed.

168)    Then came a point when Plaintiff provided the Human Rights division with information on specific evidence that the Human Rights Division should obtain from Balchem Corporation and account for in its findings.

169)    The Human Rights Division then requested the identified evidence from Balchem Corporation.

170)    Balchem Corporation refused to produce the discovery sought.

171)    For example, the Human Rights Division asked to produce a copy of plaintiff's performance evaluation for the year 2015/2016, but they declined.

172)    The said performance evaluation would have shown that Plaintiff performance at met expectations.

173)    The Human Rights Division also asked them copies of e-mails in which Plaintiff expressed grievance over the ban of his muslim hoodie, but Balchem corporation declined to produce the requested evidence.

174)    The Human Division then sent Human Rights Division then sent Notices that if Balchem Corporation did not produce the discovery sought, then Plaintiff may be entitled to seek remedy in Federal Court, but Balchem Corporation still did not produce the discovery sought.

175)    Plaintiff then applied for an order of Administrative Dismissal for Convenience Human Rights Division.

176)    The Human Rights Division granted Plaintiff's application for Administrative dismissal to allow Plaintiff to proceed to Court to obtain justice Human Rights Division.

177)    Defendant did not appeal the Order of Administrative Dismissal.

178)    Plaintiff then sought the Notice of Rights to sue from the EEOC and the upheld the Human Division decision Order and accordingly issued Notice Of Rights To Sue to Plaintiff on 01/20/2017 (See Attachment III).

179)    Plaintiff alleges that the events briefly narrated above demonstrated creed and religion based employment discrimination and retaliation.


## AS FOR THE FIRST CAUSE OF ACTION

### Violation of Title VII of the Civil Rights Act of 1964 Section 703(a)(1) – Discrimination Against An Individual With Respect To The Terms, Conditions, Or Privileges Of Employment, on Basis of Creed or Religion

**F.**    The Plaintiff repeats and re-alleges the preceding allegations contained in the complaint as if the same were set forth at length herein.

**G.**    Title VII of the Civil Rights Act of 1964 Section 703(a)(1), as amended, states:

*"It shall be unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or nationality of origin."*

180)    AAround Mid-May 2016, the Laboratory manager, Gideon Oenga, then called Plaintiff from his Office and said to Plaintiff that Plaintiff must stop wearing his muslim hoodie to work because nobody at Balchem liked to see it.

181)    About two weeks later, Plaintiff was savagely harassed during a one-on-one weekly meeting in Gideon Oenga' Office for having continued to wear his muslim hoodie.

182)    Plaintiff reported the incidents to Human Resources Managers Renee McComb and to the Chief Science Officer.

183)    Plaintiff also felt very sick.

184)    Upon returning to work, Plaintiff was required by the VP of HR Bob Miniger, along with the R&D Managers to sign a performance improvement plan and to stop wearing his hoodie to work.

185)    Plaintiff objected to the said performance enhancement plan as they contained several factually false statements against Plaintiff, however consented to signing on any requirement that reflected company's code of conduct.

186)    The VP of HR Bob Miniger then highlighted in yellow color those sections that he believed to be standard Company's code of conduct.

187)    Plaintiff then initialed those sections and R&D R&D Manager Gideon Oenga also initialed the same, and Bob Miniger signed at the bottom.

188)    Plaintiff complied with the requirements of the performance Improvement Plan.

189)    Plaintiff however informed the HR manager that he had been very concerned for being singled out for PIP while he had brought new technologies Platform for the companies in a relatively short time.

190)    Plaintiff had worked on developing new technologies and around the same time analytical testing of products of the process had shown that Plaintiff was able to develop encapsulates that no scientist who worked for Balchem was ever able to do.

191)     Plaintiff applied for merit based promotion, but was denied, although I the mean time other people who have done no significant achievements were getting promotions and new offices.

192)     On or around 08/17/2016, Plaintiff decided to formally document the fact that since the ban of his hoodie by the Company, other co-workers had all along being bringing and to wear hoodies in the laboratory and workplace.

193)     Plaintiff then took a couple of pictures of the hoodies and submitted them Human Resources Managers by e-mail with comments that his hoodie had been officially banned while all other coworkers were allowed to bring their hoodies in the workplace.

194)     Plaintiff used his cell phone to take the pictures that he submitted to HR manager Rene McComb.

195)     On numerous occasions Plaintiff had used the same cell phone in the laboratory, even at the request of R&D Supervisors, to take pictures and videos of processes and products that Plaintiff had been working on as Plaintiff's as the laboratory had no video recording device.

196)     Pictures or videos taken by Plaintiff were downloaded and saved on company's computers.

197)     Shortly after communicating the hoodies pictures to HR managers, Plaintiff was then summoned at the HR Office and was accused of having stolen companies trade secrets and for having violated recording policy.

198)   During the said HR meeting in the HR Office, the VP of HR Bob Miniger informed Plaintiff that they had made the decision to suspend Plaintiff in order to investigate whether Plaintiff might have more evidence against them.

199)   Plaintiff asserted that he had taken the pictures to show evidence to HR that he was singled out for hoodie ban while others were allowed to bring theirs to work and that he continued to object to the fact that his hoodie had been banned on the basis of creed and religion.

200)   They then asked Plaintiff to go home and wait for the outcome of the investigation.

201)   On 08/01/2016, Plaintiff initiated and filed a discrimination and retaliation complaint with the EEOC (See Attachment I).

202)   On 08/17/2016, Plaintiff transferred his discrimination and retaliation complaint to the New York Division of Human Rights.

203)   The New York Division of Human Rights docketed Plaintiff's complaint on 08/19/2016 and notified Plaintiff of the same (Attachment II).

204)   On the same day 08/19/2016, in the late afternoon, Balchem Corporation suspended Plaintiff and expelled Plaintiff from workplace.

205)   On 08/22/2016, the VP of HR Bob Miniger and HR Manager Rene McComb then called Plaintiff to inform Plaintiff that Plaintiff was terminated effectively immediately.

206)   The Human Rights Division then started an investigation of the allegations.

207)    Balchem Corporation then filed an answer to the allegations with request that Plaintiff's discrimination charge be dismissed.

208)    Then came a point when Plaintiff provided the Human Rights division with information on specific evidence that the Human Rights Division should obtain from Balchem Corporation and account for in its findings.

209)    The Human Rights Division then requested the identified evidence from Balchem Corporation.

210)    Balchem Corporation refused to produce the discovery sought.

211)    For example, the Human Rights Division asked to produce a copy of plaintiff's performance evaluation for the year 2015/2016, but they declined.

212)    The said performance evaluation would have shown that Plaintiff performance at met expectations.

213)    The Human Rights Division also asked them copies of e-mails in which Plaintiff expressed grievance over the ban of his muslim hoodie, but Balchem corporation declined to produce the requested evidence.

214)    The Human Division then sent Human Rights Division then sent Notices that if Balchem Corporation did not produce the discovery sought, then Plaintiff may be entitled to seek remedy in Federal Court, but Balchem Corporation still did not produce the discovery sought.

215)    Plaintiff then applied for an order of Administrative Dismissal for Convenience Human Rights Division.

216)   The Human Rights Division granted Plaintiff's application for Administrative dismissal to allow Plaintiff to proceed to Court to obtain justice Human Rights Division.

217)   Defendant did not appeal the Order of Administrative Dismissal.

218)   Plaintiff then sought the Notice of Rights to sue from the EEOC and the upheld the Human Division decision Order and accordingly issued Notice Of Rights To Sue to Plaintiff on 01/20/2017 (See Attachment III).

219)   Plaintiff alleges that the events briefly narrated above demonstrated creed and religion based employment discrimination and retaliation.

220)   Since the sudden termination of the Plaintiff's employment by Defendants, the Plaintiff has been unemployed and has lost wages and benefits

221)   The Plaintiff complied with the laws and filed a discrimination complaint with the U.S. Equal Employment Opportunity Commission (EEOC Charge No. 16GB603921 and 16GB04020) through the work sharing agreement with the New York Division of Human Rights (cases # 10183250, and 10183369 respectively ), as can be seen in "ATTACHMENT II and III".

222)   The Notice of Right to Sue Balchem Corporation was issued by the Commission on 01/20/2017, and the Plaintiff has prepared and filed this lawsuit within the 90 days statutory time after issuance of Notice of Right to Sue.

223)   Plaintiff alleges that the events briefly narrated above demonstrated creed and religion based employment discrimination and retaliation.

## AS FOR THE SECOND CAUSE OF ACTION

### Violation of Title VII of the Civil Rights Act of 1964 Section 704(a) – Discrimination Against An Applicant For Employment Because He Has Opposed Practice Made Unlawful By Title VII

**H.**     The Plaintiff repeats and re-alleges the preceding allegations contained in the complaint as if the same were set forth at length herein.

**I.**     Title VII of the Civil Rights Act of 1964 Section 704(a) states:

*"It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted or participated in any manner in an investigation , proceeding or hearing under this title"*

224)     Around Mid-May 2016, the Laboratory manager, Gideon Oenga, then called Plaintiff from his Office and said to Plaintiff that Plaintiff must stop wearing his muslim hoodie to work because nobody at Balchem liked to see it.

225)     About two weeks later, Plaintiff was savagely harassed during a one-on-one weekly meeting in Gideon Oenga' Office for having continued to wear his muslim hoodie.

226)     Plaintiff reported the incidents to Human Resources Managers Renee McComb and to the Chief Science Officer.

227)     Plaintiff also felt very sick.

228)     Upon returning to work, Plaintiff was required by the VP of HR Bob Miniger, along with the R&D Managers to sign a performance improvement plan and to stop wearing his hoodie to work.

29

229)   Plaintiff objected to the said performance enhancement plan as they contained several factually false statements against Plaintiff, however consented to signing on any requirement that reflected company's code of conduct.

230)   The VP of HR Bob Miniger then highlighted in yellow color those sections that he believed to be standard Company's code of conduct.

231)   Plaintiff then initialed those sections and R&D R&D Manager Gideon Oenga also initialed the same, and Bob Miniger signed at the bottom.

232)   Plaintiff complied with the requirements of the performance Improvement Plan.

233)   Plaintiff however informed the HR manager that he had been very concerned for being singled out for PIP while he had brought new technologies Platform for the companies in a relatively short time.

234)   Plaintiff had worked on developing new technologies and around the same time analytical testing of products of the process had shown that Plaintiff was able to develop encapsulates that no scientist who worked for Balchem was ever able to do.

235)   Plaintiff applied for merit based promotion, but was denied, although I the mean time other people who have done no significant achievements were getting promotions and new offices.

236)   On or around 08/17/2016, Plaintiff decided to formally document the fact that since the ban of his hoodie by the Company, other co-workers had all along being bringing and to wear hoodies in the laboratory and workplace.

237)    Plaintiff then took a couple of pictures of the hoodies and submitted them Human Resources Managers by e-mail with comments that his hoodie had been officially banned while all other coworkers were allowed to bring their hoodies in the workplace.

238)    Plaintiff used his cell phone to take the pictures that he submitted to HR manager Rene McComb.

239)    On numerous occasions Plaintiff had used the same cell phone in the laboratory, even at the request of R&D Supervisors, to take pictures and videos of processes and products that Plaintiff had been working on as Plaintiff's as the laboratory had no video recording device.

240)    Pictures or videos taken by Plaintiff were downloaded and saved on company's computers.

241)    Shortly after communicating the hoodies pictures to HR managers, Plaintiff was then summoned at the HR Office and was accused of having stolen companies trade secrets and for having violated recording policy.

242)    During the said HR meeting in the HR Office, the VP of HR Bob Miniger informed Plaintiff that they had made the decision to suspend Plaintiff in order to investigate whether Plaintiff might have more evidence against them.

243)    Plaintiff asserted that he had taken the pictures to show evidence to HR that he was singled out for hoodie ban while others were allowed to bring theirs to work and that he continued to object to the fact that his hoodie had been banned on the basis of creed and religion.

244)   They then asked Plaintiff to go home and wait for the outcome of the investigation.

245)   On 08/01/2016, Plaintiff initiated and filed a discrimination and retaliation complaint with the EEOC (See Attachment I).

246)   On 08/17/2016, Plaintiff transferred his discrimination and retaliation complaint to the New York Division of Human Rights.

247)   The New York Division of Human Rights docketed Plaintiff's complaint on 08/19/2016 and notified Plaintiff of the same (Attachment II).

248)   On the same day 08/19/2016, in the late afternoon, Balchem Corporation suspended Plaintiff and expelled Plaintiff from workplace.

249)   On 08/22/2016, the VP of HR Bob Miniger and HR Manager Rene McComb then called Plaintiff to inform Plaintiff that Plaintiff was terminated effectively immediately.

250)   The Human Rights Division then started an investigation of the allegations.

251)   Balchem Corporation then filed an answer to the allegations with request that Plaintiff's discrimination charge be dismissed.

252)   Then came a point when Plaintiff provided the Human Rights division with information on specific evidence that the Human Rights Division should obtain from Balchem Corporation and account for in its findings.

253)   The Human Rights Division then requested the identified evidence from Balchem Corporation.

254)    Balchem Corporation refused to produce the discovery sought.

255)    For example, the Human Rights Division asked to produce a copy of plaintiff's performance evaluation for the year 2015/2016, but they declined.

256)    The said performance evaluation would have shown that Plaintiff performance at met expectations.

257)    The Human Rights Division also asked them copies of e-mails in which Plaintiff expressed grievance over the ban of his muslim hoodie, but Balchem corporation declined to produce the requested evidence.

258)    The Human Division then sent Human Rights Division then sent Notices that if Balchem Corporation did not produce the discovery sought, then Plaintiff may be entitled to seek remedy in Federal Court, but Balchem Corporation still did not produce the discovery sought.

259)    Plaintiff then applied for an order of Administrative Dismissal for Convenience Human Rights Division.

260)    The Human Rights Division granted Plaintiff's application for Administrative dismissal to allow Plaintiff to proceed to Court to obtain justice Human Rights Division.

261)    Defendant did not appeal the Order of Administrative Dismissal.

262)    Plaintiff then sought the Notice of Rights to sue from the EEOC and the upheld the Human Division decision Order and accordingly issued Notice Of Rights To Sue to Plaintiff on 01/20/2017 (See Attachment III).

263)    Plaintiff alleges that the events briefly narrated above demonstrated creed and religion based employment discrimination and retaliation.

264)    Since the sudden termination of the Plaintiff's employment by Defendants, the Plaintiff has been unemployed and has lost wages and benefits

265)    The Plaintiff complied with the laws and filed a discrimination complaint with the U.S. Equal Employment Opportunity Commission (EEOC Charge No. 16GB603921 and 16GB04020) through the work sharing agreement with the New York Division of Human Rights (cases # 10183250, and 10183369 respectively ), as can be seen in "ATTACHMENT II and III".

266)    The Notice of Right to Sue Balchem Corporation was issued by the Commission on 01/20/2017, and the Plaintiff has prepared and filed this lawsuit within the 90 days statutory time after issuance of Notice of Right to Sue.

267)    Plaintiff subsequently found out that a position of Senior Scientist was advertised on Balchem Corporation website

268)    Plaintiff applied for the position but was not considered.

269)    Plaintiff alleges that the events briefly narrated above demonstrated creed and religion based employment discrimination and retaliation.

### AS FOR THE THIRD CAUSE OF ACTION

### Wrongful Termination

270)    The Plaintiff repeats and re-alleges the preceding allegations contained in the complaint as if the same were set forth at length herein.

271)   Around Mid-May 2016, the Laboratory manager, Gideon Oenga, then called Plaintiff from his Office and said to Plaintiff that Plaintiff must stop wearing his muslim hoodie to work because nobody at Balchem liked to see it.

272)   About two weeks later, Plaintiff was savagely harassed during a one-on-one weekly meeting in Gideon Oenga' Office for having continued to wear his muslim hoodie.

273)   Plaintiff reported the incidents to Human Resources Managers Renee McComb and to the Chief Science Officer.

274)   Plaintiff also felt very sick.

275)   Upon returning to work, Plaintiff was required by the VP of HR Bob Miniger, along with the R&D Managers to sign a performance improvement plan and to stop wearing his hoodie to work.

276)   Plaintiff objected to the said performance enhancement plan as they contained several factually false statements against Plaintiff, however consented to signing on any requirement that reflected company's code of conduct.

277)   The VP of HR Bob Miniger then highlighted in yellow color those sections that he believed to be standard Company's code of conduct.

278)   Plaintiff then initialed those sections and R&D R&D Manager Gideon Oenga also initialed the same, and Bob Miniger signed at the bottom.

279)   Plaintiff complied with the requirements of the performance Improvement Plan.

280)   Plaintiff however informed the HR manager that he had been very concerned for being singled out for PIP while he had brought new technologies Platform for the companies in a relatively short time.

281)   Plaintiff had worked on developing new technologies and around the same time analytical testing of products of the process had shown that Plaintiff was able to develop encapsulates that no scientist who worked for Balchem was ever able to do.

282)   Plaintiff applied for merit based promotion, but was denied, although I the mean time other people who have done no significant achievements were getting promotions and new offices.

283)   On or around 08/17/2016, Plaintiff decided to formally document the fact that since the ban of his hoodie by the Company, other co-workers had all along being bringing and to wear hoodies in the laboratory and workplace.

284)   Plaintiff then took a couple of pictures of the hoodies and submitted them Human Resources Managers by e-mail with comments that his hoodie had been officially banned while all other coworkers were allowed to bring their hoodies in the workplace.

285)   Plaintiff used his cell phone to take the pictures that he submitted to HR manager Rene McComb.

286)   On numerous occasions Plaintiff had used the same cell phone in the laboratory, even at the request of R&D Supervisors, to take pictures and videos of processes and products that Plaintiff had been working on as Plaintiff's as the laboratory had no video recording device.

287)    Pictures or videos taken by Plaintiff were downloaded and saved on company's computers.

288)    Shortly after communicating the hoodies pictures to HR managers, Plaintiff was then summoned at the HR Office and was accused of having stolen companies trade secrets and for having violated recording policy.

289)    During the said HR meeting in the HR Office, the VP of HR Bob Miniger informed Plaintiff that they had made the decision to suspend Plaintiff in order to investigate whether Plaintiff might have more evidence against them.

290)    Plaintiff asserted that he had taken the pictures to show evidence to HR that he was singled out for hoodie ban while others were allowed to bring theirs to work and that he continued to object to the fact that his hoodie had been banned on the basis of creed and religion.

291)    They then asked Plaintiff to go home and wait for the outcome of the investigation.

292)    On 08/01/2016, Plaintiff initiated and filed a discrimination and retaliation complaint with the EEOC (See Attachment I).

293)    On 08/17/2016, Plaintiff transferred his discrimination and retaliation complaint to the New York Division of Human Rights.

294)    The New York Division of Human Rights docketed Plaintiff's complaint on 08/19/2016 and notified Plaintiff of the same (Attachment II).

295)   On the same day 08/19/2016, in the late afternoon, Balchem Corporation suspended Plaintiff and expelled Plaintiff from workplace.

296)   On 08/22/2016, the VP of HR Bob Miniger and HR Manager Rene McComb then called Plaintiff to inform Plaintiff that Plaintiff was terminated effectively immediately.

297)   The Human Rights Division then started an investigation of the allegations.

298)   Balchem Corporation then filed an answer to the allegations with request that Plaintiff's discrimination charge be dismissed.

299)   Then came a point when Plaintiff provided the Human Rights division with information on specific evidence that the Human Rights Division should obtain from Balchem Corporation and account for in its findings.

300)   The Human Rights Division then requested the identified evidence from Balchem Corporation.

301)   Balchem Corporation refused to produce the discovery sought.

302)   For example, the Human Rights Division asked to produce a copy of plaintiff's performance evaluation for the year 2015/2016, but they declined.

303)   The said performance evaluation would have shown that Plaintiff performance at met expectations.

304)   The Human Rights Division also asked them copies of e-mails in which Plaintiff expressed grievance over the ban of his muslim hoodie, but Balchem corporation declined to produce the requested evidence.

305)   The Human Division then sent Human Rights Division then sent Notices that if Balchem Corporation did not produce the discovery sought, then Plaintiff may be entitled to seek remedy in Federal Court, but Balchem Corporation still did not produce the discovery sought.

306)   Plaintiff then applied for an order of Administrative Dismissal for Convenience Human Rights Division.

307)   The Human Rights Division granted Plaintiff's application for Administrative dismissal to allow Plaintiff to proceed to Court to obtain justice Human Rights Division.

308)   Defendant did not appeal the Order of Administrative Dismissal.

309)   Plaintiff then sought the Notice of Rights to sue from the EEOC and the upheld the Human Division decision Order and accordingly issued Notice Of Rights To Sue to Plaintiff on 01/20/2017 (See Attachment III).

310)   Plaintiff alleges that the events briefly narrated above demonstrated creed and religion based employment discrimination and retaliation.

311)   Since the sudden termination of the Plaintiff's employment by Defendants, the Plaintiff has been unemployed and has lost wages and benefits

312)   The Plaintiff complied with the laws and filed a discrimination complaint with the U.S. Equal Employment Opportunity Commission (EEOC Charge No. 16GB603921 and 16GB04020) through the work sharing agreement with the New York Division of Human Rights (cases # 10183250, and 10183369 respectively ), as can be seen in "ATTACHMENT II and III".

313)    The Notice of Right to Sue Balchem Corporation was issued by the Commission on 01/20/2017, and the Plaintiff has prepared and filed this lawsuit within the 90 days statutory time after issuance of Notice of Right to Sue.

314)    Plaintiff was wrongful terminated by Balchem corporation, Bob Minger, Renee McComb and Gideon Oenga.

## AS FOR THE FOURTH CAUSE OF ACTION

### Breach of Contract and/or Breach Of Implied Contract

315)    The Plaintiff repeats and re-alleges the preceding allegations contained in the complaint as if the same were set forth at length herein.

316)    Around Mid-May 2016, the Laboratory manager, Gideon Oenga, then called Plaintiff from his Office and said to Plaintiff that Plaintiff must stop wearing his muslim hoodie to work because nobody at Balchem liked to see it.

317)    About two weeks later, Plaintiff was savagely harassed during a one-on-one weekly meeting in Gideon Oenga' Office for having continued to wear his muslim hoodie.

318)    Plaintiff reported the incidents to Human Resources Managers Renee McComb and to the Chief Science Officer.

319)    Plaintiff also felt very sick.

320)    Upon returning to work, Plaintiff was required by the VP of HR Bob Miniger, along with the R&D Managers to sign a performance improvement plan and to stop wearing his hoodie to work.

321)   Plaintiff objected to the said performance enhancement plan as they contained several factually false statements against Plaintiff, however consented to signing on any requirement that reflected company's code of conduct.

322)   The VP of HR Bob Miniger then highlighted in yellow color those sections that he believed to be standard Company's code of conduct.

323)   Plaintiff then initialed those sections and R&D R&D Manager Gideon Oenga also initialed the same, and Bob Miniger signed at the bottom.

324)   Plaintiff complied with the requirements of the performance Improvement Plan.

325)   Plaintiff however informed the HR manager that he had been very concerned for being singled out for PIP while he had brought new technologies Platform for the companies in a relatively short time.

326)   Plaintiff had worked on developing new technologies and around the same time analytical testing of products of the process had shown that Plaintiff was able to develop encapsulates that no scientist who worked for Balchem was ever able to do.

327)   Plaintiff applied for merit based promotion, but was denied, although I the mean time other people who have done no significant achievements were getting promotions and new offices.

328)   On or around 08/17/2016, Plaintiff decided to formally document the fact that since the ban of his hoodie by the Company, other co-workers had all along being bringing and to wear hoodies in the laboratory and workplace.

41

329)    Plaintiff then took a couple of pictures of the hoodies and submitted them Human Resources Managers by e-mail with comments that his hoodie had been officially banned while all other coworkers were allowed to bring their hoodies in the workplace.

330)    Plaintiff used his cell phone to take the pictures that he submitted to HR manager Rene McComb.

331)    On numerous occasions Plaintiff had used the same cell phone in the laboratory, even at the request of R&D Supervisors, to take pictures and videos of processes and products that Plaintiff had been working on as Plaintiff's as the laboratory had no video recording device.

332)    Pictures or videos taken by Plaintiff were downloaded and saved on company's computers.

333)    Shortly after communicating the hoodies pictures to HR managers, Plaintiff was then summoned at the HR Office and was accused of having stolen companies trade secrets and for having violated recording policy.

334)    During the said HR meeting in the HR Office, the VP of HR Bob Miniger informed Plaintiff that they had made the decision to suspend Plaintiff in order to investigate whether Plaintiff might have more evidence against them.

335)    Plaintiff asserted that he had taken the pictures to show evidence to HR that he was singled out for hoodie ban while others were allowed to bring theirs to work and that he continued to object to the fact that his hoodie had been banned on the basis of creed and religion.

336)   They then asked Plaintiff to go home and wait for the outcome of the investigation.

337)   On 08/01/2016, Plaintiff initiated and filed a discrimination and retaliation complaint with the EEOC (See Attachment I).

338)   On 08/17/2016, Plaintiff transferred his discrimination and retaliation complaint to the New York Division of Human Rights.

339)   The New York Division of Human Rights docketed Plaintiff's complaint on 08/19/2016 and notified Plaintiff of the same (Attachment II).

340)   On the same day 08/19/2016, in the late afternoon, Balchem Corporation suspended Plaintiff and expelled Plaintiff from workplace.

341)   On 08/22/2016, the VP of HR Bob Miniger and HR Manager Rene McComb then called Plaintiff to inform Plaintiff that Plaintiff was terminated effectively immediately.

342)   The Human Rights Division then started an investigation of the allegations.

343)   Balchem Corporation then filed an answer to the allegations with request that Plaintiff's discrimination charge be dismissed.

344)   Then came a point when Plaintiff provided the Human Rights division with information on specific evidence that the Human Rights Division should obtain from Balchem Corporation and account for in its findings.

345)   The Human Rights Division then requested the identified evidence from Balchem Corporation.

43

346)    Balchem Corporation refused to produce the discovery sought.

347)    For example, the Human Rights Division asked to produce a copy of plaintiff's performance evaluation for the year 2015/2016, but they declined.

348)    The said performance evaluation would have shown that Plaintiff performance at met expectations.

349)    The Human Rights Division also asked them copies of e-mails in which Plaintiff expressed grievance over the ban of his muslim hoodie, but Balchem corporation declined to produce the requested evidence.

350)    The Human Division then sent Human Rights Division then sent Notices that if Balchem Corporation did not produce the discovery sought, then Plaintiff may be entitled to seek remedy in Federal Court, but Balchem Corporation still did not produce the discovery sought.

351)    Plaintiff then applied for an order of Administrative Dismissal for Convenience Human Rights Division.

352)    The Human Rights Division granted Plaintiff's application for Administrative dismissal to allow Plaintiff to proceed to Court to obtain justice Human Rights Division.

353)    Defendant did not appeal the Order of Administrative Dismissal.

354)    Plaintiff then sought the Notice of Rights to sue from the EEOC and the upheld the Human Division decision Order and accordingly issued Notice Of Rights To Sue to Plaintiff on 01/20/2017 (See Attachment III).

355)   Plaintiff alleges that the events briefly narrated above demonstrated creed and religion based employment discrimination and retaliation.

356)   Since the sudden termination of the Plaintiff's employment by Defendants, the Plaintiff has been unemployed and has lost wages and benefits

357)   The Plaintiff complied with the laws and filed a discrimination complaint with the U.S. Equal Employment Opportunity Commission (EEOC Charge No. 16GB603921 and 16GB04020) through the work sharing agreement with the New York Division of Human Rights (cases # 10183250, and 10183369 respectively ), as can be seen in "ATTACHMENT II and III".

358)   The Notice of Right to Sue Balchem Corporation was issued by the Commission on 01/20/2017, and the Plaintiff has prepared and filed this lawsuit within the 90 days statutory time after issuance of Notice of Right to Sue.

359)   Plaintiff was wrongful terminated by Balchem corporation, Bob Minger, Renee McComb and Gideon Oenga.

360)   Plaintiff's employment offer stipulated that Plaintiff will be promoted upon demonstrating progress on bringing new technologies to the company.

361)   Plaintiff successfully brought new technologies that Balchem never had.

362)   Plaintiff applied for promotion but was denied.

## AS FOR THE FIFTH  CAUSE OF ACTION

### Infliction of Emotional Distress

363)   The Plaintiff repeats and re-alleges the preceding allegations contained in the complaint as if the same were set forth at length herein.

364)   Around Mid-May 2016, the Laboratory manager, Gideon Oenga, then called Plaintiff from his Office and said to Plaintiff that Plaintiff must stop wearing his muslim hoodie to work because nobody at Balchem liked to see it.

365)   About two weeks later, Plaintiff was savagely harassed during a one-on-one weekly meeting in Gideon Oenga' Office for having continued to wear his muslim hoodie.

366)   Plaintiff reported the incidents to Human Resources Managers Renee McComb and to the Chief Science Officer.

367)   Plaintiff also felt very sick.

368)   Upon returning to work, Plaintiff was required by the VP of HR Bob Miniger, along with the R&D Managers to sign a performance improvement plan and to stop wearing his hoodie to work.

369)   Plaintiff objected to the said performance enhancement plan as they contained several factually false statements against Plaintiff, however consented to signing on any requirement that reflected company's code of conduct.

370)   The VP of HR Bob Miniger then highlighted in yellow color those sections that he believed to be standard Company's code of conduct.

371)   Plaintiff then initialed those sections and R&D R&D Manager Gideon Oenga also initialed the same, and Bob Miniger signed at the bottom.

46

372)   Plaintiff complied with the requirements of the performance Improvement Plan.

373)   Plaintiff however informed the HR manager that he had been very concerned for being singled out for PIP while he had brought new technologies Platform for the companies in a relatively short time.

374)   Plaintiff had worked on developing new technologies and around the same time analytical testing of products of the process had shown that Plaintiff was able to develop encapsulates that no scientist who worked for Balchem was ever able to do.

375)   Plaintiff applied for merit based promotion, but was denied, although I the mean time other people who have done no significant achievements were getting promotions and new offices.

376)   On or around 08/17/2016, Plaintiff decided to formally document the fact that since the ban of his hoodie by the Company, other co-workers had all along being bringing and to wear hoodies in the laboratory and workplace.

377)   Plaintiff then took a couple of pictures of the hoodies and submitted them Human Resources Managers by e-mail with comments that his hoodie had been officially banned while all other coworkers were allowed to bring their hoodies in the workplace.

378)   Plaintiff used his cell phone to take the pictures that he submitted to HR manager Rene McComb.

379)   On numerous occasions Plaintiff had used the same cell phone in the laboratory, even at the request of R&D Supervisors, to take pictures and videos of processes and products that Plaintiff had been working on as Plaintiff's as the laboratory had no video recording device.

380)   Pictures or videos taken by Plaintiff were downloaded and saved on company's computers.

381)   Shortly after communicating the hoodies pictures to HR managers, Plaintiff was then summoned at the HR Office and was accused of having stolen companies trade secrets and for having violated recording policy.

382)   During the said HR meeting in the HR Office, the VP of HR Bob Miniger informed Plaintiff that they had made the decision to suspend Plaintiff in order to investigate whether Plaintiff might have more evidence against them.

383)   Plaintiff asserted that he had taken the pictures to show evidence to HR that he was singled out for hoodie ban while others were allowed to bring theirs to work and that he continued to object to the fact that his hoodie had been banned on the basis of creed and religion.

384)   They then asked Plaintiff to go home and wait for the outcome of the investigation.

385)   On 08/01/2016, Plaintiff initiated and filed a discrimination and retaliation complaint with the EEOC (See Attachment I).

386)   On 08/17/2016, Plaintiff transferred his discrimination and retaliation complaint to the New York Division of Human Rights.

387)   The New York Division of Human Rights docketed Plaintiff's complaint on 08/19/2016 and notified Plaintiff of the same (Attachment II).

388)   On the same day 08/19/2016, in the late afternoon, Balchem Corporation suspended Plaintiff and expelled Plaintiff from workplace.

389)   On 08/22/2016, the VP of HR Bob Miniger and HR Manager Rene McComb then called Plaintiff to inform Plaintiff that Plaintiff was terminated effectively immediately.

390)   The Human Rights Division then started an investigation of the allegations.

391)   Balchem Corporation then filed an answer to the allegations with request that Plaintiff's discrimination charge be dismissed.

392)    Then came a point when Plaintiff provided the Human Rights division with information on specific evidence that the Human Rights Division should obtain from Balchem Corporation and account for in its findings.

393)   The Human Rights Division then requested the identified evidence from Balchem Corporation.

394)   Balchem Corporation refused to produce the discovery sought.

395)   For example, the Human Rights Division asked to produce a copy of plaintiff's performance evaluation for the year 2015/2016, but they declined.

396)   The said performance evaluation would have shown that Plaintiff performance at met expectations.

49

397)    The Human Rights Division also asked them copies of e-mails in which Plaintiff expressed grievance over the ban of his muslim hoodie, but Balchem corporation declined to produce the requested evidence.

398)    The Human Division then sent Human Rights Division then sent Notices that if Balchem Corporation did not produce the discovery sought, then Plaintiff may be entitled to seek remedy in Federal Court, but Balchem Corporation still did not produce the discovery sought.

399)    Plaintiff then applied for an order of Administrative Dismissal for Convenience Human Rights Division.

400)    The Human Rights Division granted Plaintiff's application for Administrative dismissal to allow Plaintiff to proceed to Court to obtain justice Human Rights Division.

401)    Defendant did not appeal the Order of Administrative Dismissal.

402)    Plaintiff then sought the Notice of Rights to sue from the EEOC and the upheld the Human Division decision Order and accordingly issued Notice Of Rights To Sue to Plaintiff on 01/20/2017 (See Attachment III).

403)    Plaintiff alleges that the events briefly narrated above demonstrated creed and religion based employment discrimination and retaliation.

404)    Since the sudden termination of the Plaintiff's employment by Defendants, the Plaintiff has been unemployed and has lost wages and benefits

405)    The Plaintiff complied with the laws and filed a discrimination complaint with the U.S. Equal Employment Opportunity Commission (EEOC Charge No. 16GB603921 and

16GB04020) through the work sharing agreement with the New York Division of Human Rights (cases # 10183250, and 10183369 respectively ), as can be seen in "ATTACHMENTS II and III".

406)    The Notice of Right to Sue Balchem Corporation was issued by the Commission on 01/20/2017, and the Plaintiff has prepared and filed this lawsuit within the 90 days statutory time after issuance of Notice of Right to Sue.

407)    Plaintiff was wrongful terminated by Balchem Corporation, Bob Minger, Renee McComb and Gideon Oenga.

408)    Plaintiff's employment offer stipulated that Plaintiff will be promoted upon demonstrating progress on bringing new technologies to the company.

409)    Plaintiff successfully brought new technologies that Balchem never had.

410)    Plaintiff applied for promotion but was denied.

411)    Plaintiff suffered emotional distress as results of defendants' actions.

412)    Plaintiff had medical care and treatment for the distress caused by defendants.

### AS FOR THE SIXTH CAUSE OF ACTION

#### Negligence, Negligence Per Se

413)    The Plaintiff repeats and re-alleges the preceding allegations contained in the complaint as if the same were set forth at length herein.

414)    Around Mid-May 2016, the Laboratory manager, Gideon Oenga, then called Plaintiff from his Office and said to Plaintiff that Plaintiff must stop wearing his muslim hoodie to work because nobody at Balchem liked to see it.

415)    About two weeks later, Plaintiff was savagely harassed during a one-on-one weekly meeting in Gideon Oenga' Office for having continued to wear his muslim hoodie.

416)    Plaintiff reported the incidents to Human Resources Managers Renee McComb and to the Chief Science Officer.

417)    Plaintiff also felt very sick.

418)    Upon returning to work, Plaintiff was required by the VP of HR Bob Miniger, along with the R&D Managers to sign a performance improvement plan and to stop wearing his hoodie to work.

419)    Plaintiff objected to the said performance enhancement plan as they contained several factually false statements against Plaintiff, however consented to signing on any requirement that reflected company's code of conduct.

420)    The VP of HR Bob Miniger then highlighted in yellow color those sections that he believed to be standard Company's code of conduct.

421)    Plaintiff then initialed those sections and R&D R&D Manager Gideon Oenga also initialed the same, and Bob Miniger signed at the bottom.

422)    Plaintiff complied with the requirements of the performance Improvement Plan.

423)   Plaintiff however informed the HR manager that he had been very concerned for being singled out for PIP while he had brought new technologies Platform for the companies in a relatively short time.

424)   Plaintiff had worked on developing new technologies and around the same time analytical testing of products of the process had shown that Plaintiff was able to develop encapsulates that no scientist who worked for Balchem was ever able to do.

425)   Plaintiff applied for merit based promotion, but was denied, although I the mean time other people who have done no significant achievements were getting promotions and new offices.

426)   On or around 08/17/2016, Plaintiff decided to formally document the fact that since the ban of his hoodie by the Company, other co-workers had all along being bringing and to wear hoodies in the laboratory and workplace.

427)   Plaintiff then took a couple of pictures of the hoodies and submitted them Human Resources Managers by e-mail with comments that his hoodie had been officially banned while all other coworkers were allowed to bring their hoodies in the workplace.

428)   Plaintiff used his cell phone to take the pictures that he submitted to HR manager Rene McComb.

429)   On numerous occasions Plaintiff had used the same cell phone in the laboratory, even at the request of R&D Supervisors, to take pictures and videos of processes and products that Plaintiff had been working on as Plaintiff's as the laboratory had no video recording device.

430)    Pictures or videos taken by Plaintiff were downloaded and saved on company's computers.

431)    Shortly after communicating the hoodies pictures to HR managers, Plaintiff was then summoned at the HR Office and was accused of having stolen companies trade secrets and for having violated recording policy.

432)    During the said HR meeting in the HR Office, the VP of HR Bob Miniger informed Plaintiff that they had made the decision to suspend Plaintiff in order to investigate whether Plaintiff might have more evidence against them.

433)    Plaintiff asserted that he had taken the pictures to show evidence to HR that he was singled out for hoodie ban while others were allowed to bring theirs to work and that he continued to object to the fact that his hoodie had been banned on the basis of creed and religion.

434)    They then asked Plaintiff to go home and wait for the outcome of the investigation.

435)    On 08/01/2016, Plaintiff initiated and filed a discrimination and retaliation complaint with the EEOC (See Attachment I).

436)    On 08/17/2016, Plaintiff transferred his discrimination and retaliation complaint to the New York Division of Human Rights.

437)    The New York Division of Human Rights docketed Plaintiff's complaint on 08/19/2016 and notified Plaintiff of the same (Attachment II).

438)  On the same day 08/19/2016, in the late afternoon, Balchem Corporation suspended Plaintiff and expelled Plaintiff from workplace.

439)  On 08/22/2016, the VP of HR Bob Miniger and HR Manager Rene McComb then called Plaintiff to inform Plaintiff that Plaintiff was terminated effectively immediately.

440)  The Human Rights Division then started an investigation of the allegations.

441)  Balchem Corporation then filed an answer to the allegations with request that Plaintiff's discrimination charge be dismissed.

442)  Then came a point when Plaintiff provided the Human Rights division with information on specific evidence that the Human Rights Division should obtain from Balchem Corporation and account for in its findings.

443)  The Human Rights Division then requested the identified evidence from Balchem Corporation.

444)  Balchem Corporation refused to produce the discovery sought.

445)  For example, the Human Rights Division asked to produce a copy of plaintiff's performance evaluation for the year 2015/2016, but they declined.

446)  The said performance evaluation would have shown that Plaintiff performance at met expectations.

447)  The Human Rights Division also asked them copies of e-mails in which Plaintiff expressed grievance over the ban of his muslim hoodie, but Balchem corporation declined to produce the requested evidence.

448)    The Human Division then sent Human Rights Division then sent Notices that if Balchem Corporation did not produce the discovery sought, then Plaintiff may be entitled to seek remedy in Federal Court, but Balchem Corporation still did not produce the discovery sought.

449)    Plaintiff then applied for an order of Administrative Dismissal for Convenience Human Rights Division.

450)    The Human Rights Division granted Plaintiff's application for Administrative dismissal to allow Plaintiff to proceed to Court to obtain justice Human Rights Division.

451)    Defendant did not appeal the Order of Administrative Dismissal.

452)    Plaintiff then sought the Notice of Rights to sue from the EEOC and the upheld the Human Division decision Order and accordingly issued Notice Of Rights To Sue to Plaintiff on 01/20/2017 (See Attachment III).

453)    Plaintiff alleges that the events briefly narrated above demonstrated creed and religion based employment discrimination and retaliation.

454)    Since the sudden termination of the Plaintiff's employment by Defendants, the Plaintiff has been unemployed and has lost wages and benefits

455)    The Plaintiff complied with the laws and filed a discrimination complaint with the U.S. Equal Employment Opportunity Commission (EEOC Charge No. 16GB603921 and 16GB04020) through the work sharing agreement with the New York Division of Human Rights (cases # 10183250, and 10183369 respectively ), as can be seen in "ATTACHMENT II and III".

456)    The Notice of Right to Sue Balchem Corporation was issued by the Commission on 01/20/2017, and the Plaintiff has prepared and filed this lawsuit within the 90 days statutory time after issuance of Notice of Right to Sue.

457)    Plaintiff was wrongful terminated by Balchem corporation, Bob Minger, Renee McComb and Gideon Oenga.

458)    Plaintiff's employment offer stipulated that Plaintiff will be promoted upon demonstrating progress on bringing new technologies to the company.

459)    Plaintiff successfully brought new technologies that Balchem never had.

460)    Plaintiff applied for promotion but was denied.

461)    Plaintiff suffered emotional distress as results of defendants' actions.

462)    Plaintiff had medical care and treatment for the distress caused by defendants.

## AS FOR THE SEVENTH CAUSE OF ACTION

### Fraudulent Concealment

463)    The Plaintiff repeats and re-alleges the preceding allegations contained in the complaint as if the same were set forth at length herein.

464)    Around Mid-May 2016, the Laboratory manager, Gideon Oenga, then called Plaintiff from his Office and said to Plaintiff that Plaintiff must stop wearing his muslim hoodie to work because nobody at Balchem liked to see it.

465)    About two weeks later, Plaintiff was savagely harassed during a one-on-one weekly meeting in Gideon Oenga' Office for having continued to wear his muslim hoodie.

466)    Plaintiff reported the incidents to Human Resources Managers Renee McComb and to the Chief Science Officer.

467)    Plaintiff also felt very sick.

468)    Upon returning to work, Plaintiff was required by the VP of HR Bob Miniger, along with the R&D Managers to sign a performance improvement plan and to stop wearing his hoodie to work.

469)    Plaintiff objected to the said performance enhancement plan as they contained several factually false statements against Plaintiff, however consented to signing on any requirement that reflected company's code of conduct.

470)    The VP of HR Bob Miniger then highlighted in yellow color those sections that he believed to be standard Company's code of conduct.

471)    Plaintiff then initialed those sections and R&D R&D Manager Gideon Oenga also initialed the same, and Bob Miniger signed at the bottom.

472)    Plaintiff complied with the requirements of the performance Improvement Plan.

473)    Plaintiff however informed the HR manager that he had been very concerned for being singled out for PIP while he had brought new technologies Platform for the companies in a relatively short time.

474)    Plaintiff had worked on developing new technologies and around the same time analytical testing of products of the process had shown that Plaintiff was able to develop encapsulates that no scientist who worked for Balchem was ever able to do.

475)   Plaintiff applied for merit based promotion, but was denied, although I the mean time other people who have done no significant achievements were getting promotions and new offices.

476)   On or around 08/17/2016, Plaintiff decided to formally document the fact that since the ban of his hoodie by the Company, other co-workers had all along being bringing and to wear hoodies in the laboratory and workplace.

477)   Plaintiff then took a couple of pictures of the hoodies and submitted them Human Resources Managers by e-mail with comments that his hoodie had been officially banned while all other coworkers were allowed to bring their hoodies in the workplace.

478)   Plaintiff used his cell phone to take the pictures that he submitted to HR manager Rene McComb.

479)   On numerous occasions Plaintiff had used the same cell phone in the laboratory, even at the request of R&D Supervisors, to take pictures and videos of processes and products that Plaintiff had been working on as Plaintiff's as the laboratory had no video recording device.

480)   Pictures or videos taken by Plaintiff were downloaded and saved on company's computers.

481)   Shortly after communicating the hoodies pictures to HR managers, Plaintiff was then summoned at the HR Office and was accused of having stolen companies trade secrets and for having violated recording policy.

482)   During the said HR meeting in the HR Office, the VP of HR Bob Miniger informed Plaintiff that they had made the decision to suspend Plaintiff in order to investigate whether Plaintiff might have more evidence against them.

483)   Plaintiff asserted that he had taken the pictures to show evidence to HR that he was singled out for hoodie ban while others were allowed to bring theirs to work and that he continued to object to the fact that his hoodie had been banned on the basis of creed and religion.

484)   They then asked Plaintiff to go home and wait for the outcome of the investigation.

485)   On 08/01/2016, Plaintiff initiated and filed a discrimination and retaliation complaint with the EEOC (See Attachment I).

486)   On 08/17/2016, Plaintiff transferred his discrimination and retaliation complaint to the New York Division of Human Rights.

487)   The New York Division of Human Rights docketed Plaintiff's complaint on 08/19/2016 and notified Plaintiff of the same (Attachment II).

488)   On the same day 08/19/2016, in the late afternoon, Balchem Corporation suspended Plaintiff and expelled Plaintiff from workplace.

489)   On 08/22/2016, the VP of HR Bob Miniger and HR Manager Rene McComb then called Plaintiff to inform Plaintiff that Plaintiff was terminated effectively immediately.

490)   The Human Rights Division then started an investigation of the allegations.

491)   Balchem Corporation then filed an answer to the allegations with request that Plaintiff's discrimination charge be dismissed.

492)   Then came a point when Plaintiff provided the Human Rights division with information on specific evidence that the Human Rights Division should obtain from Balchem Corporation and account for in its findings.

493)   The Human Rights Division then requested the identified evidence from Balchem Corporation.

494)   Balchem Corporation refused to produce the discovery sought.

495)   For example, the Human Rights Division asked to produce a copy of plaintiff's performance evaluation for the year 2015/2016, but they declined.

496)   The said performance evaluation would have shown that Plaintiff performance at met expectations.

497)   The Human Rights Division also asked them copies of e-mails in which Plaintiff expressed grievance over the ban of his muslim hoodie, but Balchem corporation declined to produce the requested evidence.

498)   The Human Division then sent Human Rights Division then sent Notices that if Balchem Corporation did not produce the discovery sought, then Plaintiff may be entitled to seek remedy in Federal Court, but Balchem Corporation still did not produce the discovery sought.

499)   Plaintiff then applied for an order of Administrative Dismissal for Convenience Human Rights Division.

61

500)    The Human Rights Division granted Plaintiff's application for Administrative dismissal to allow Plaintiff to proceed to Court to obtain justice Human Rights Division.

501)    Defendant did not appeal the Order of Administrative Dismissal.

502)    Plaintiff then sought the Notice of Rights to sue from the EEOC and the upheld the Human Division decision Order and accordingly issued Notice Of Rights To Sue to Plaintiff on 01/20/2017 (See Attachment III).

503)    Plaintiff alleges that the events briefly narrated above demonstrated creed and religion based employment discrimination and retaliation.

504)    Since the sudden termination of the Plaintiff's employment by Defendants, the Plaintiff has been unemployed and has lost wages and benefits

505)    The Plaintiff complied with the laws and filed a discrimination complaint with the U.S. Equal Employment Opportunity Commission (EEOC Charge No. 16GB603921 and 16GB04020) through the work sharing agreement with the New York Division of Human Rights (cases # 10183250, and 10183369 respectively ), as can be seen in "ATTACHMENT II and III".

506)    The Notice of Right to Sue Balchem Corporation was issued by the Commission on 01/20/2017, and the Plaintiff has prepared and filed this lawsuit within the 90 days statutory time after issuance of Notice of Right to Sue.

507)    Plaintiff was wrongful terminated by Balchem corporation, Bob Minger, Renee McComb and Gideon Oenga.

508)   Plaintiff's employment offer stipulated that Plaintiff will be promoted upon demonstrating progress on bringing new technologies to the company.

509)   Plaintiff successfully brought new technologies that Balchem never had.

510)   Plaintiff applied for promotion but was denied.

511)   Plaintiff suffered emotional distress as results of defendants' actions.

512)   Plaintiff had medical care and treatment for the distress caused by defendants.

513)   The New York Division of Human Rights asked defendants to produce discovery in their possession.

514)   Defendants refused to do so.

515)   The said discovery would have established clearly that Defendants had committed employment discrimination.

516)   Wherefore the Plaintiff demand monetary relief comprising of back pay, front pay; Compensatory damages; Punitive Damages; Injunctive relief comprising of injunction with respect to any future unlawful discrimination; Make-whole relief comprising of retroactive seniority, tenure, restoration of benefits, salary adjustment, expunging adverse material from personnel files, costs of suit, attorney fees, letters of commendation and any such relief as to the Court is just and equitable.

## DEMAND FOR TRIAL BY JURY

The plaintiff hereby respectfully demands a trial by jury as to all claims and issues so triable.

I declare under penalty of perjury that I am the plaintiff in this action, that I have read the complaint, and that the information contained in the complaint is true and correct, as required by 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed at _East Brunswick_ on _04/13/2017_
(Location)                          (Date)

_____
Plaintiff's Original Signature.


**By:** Ricky Kamdem-Ouaffo.
301 Cozzens Court
East Brunswick, NJ 08816
Tel: 1 732 763 8622
**E-mail (For ECF):** rickykamer@gmail.com