UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
RICKY KAMDEN-OUAFFO,

                                        Plaintiff,

          v.                                                                    **ORDER ADOPTING REPORT**
                                                                                **AND RECOMMENDATION**

BALCHEM CORP., et al,                                         17-CV-2810 (PMH)

                                        Defendants.
-------------------------------------------------------------X

PHILIP M. HALPERN, United States District Judge:

          Plaintiff Ricky Kamden-Ouaffo ("Plaintiff"), proceeding *pro se*, initiated this action on

April 14, 2017 and presses claims against Balchem Corporation ("Balchem") and six of its current

or former executives and employees (collectively "Defendants")[1] alleging discrimination on the

basis of Plaintiff's Muslim religious practices that resulted in his termination. This action was

referred to Chief Magistrate Judge Davison for general pretrial supervision on January 14, 2020.

(Doc. 75).[2] On November 2, 2020, Defendants moved, pursuant to Federal Rule of Civil Procedure

37, for an order imposing sanctions on Plaintiff including dismissal of this action. (Doc. 201). On

December 23, 2020, Judge Davison issued a Report and Recommendation (the "Report")

recommending that Defendants' motion for sanctions be granted based on Plaintiff's discovery

misconduct related to his failure to appear for his court-ordered October 13, 2020 deposition. (*See*

---

[1] The individual defendants include Gideon Oenga, Renee McComb, Theodore Harris, John Kuehner, Travis Larsen, and Michael Sestrick. While Plaintiff also names Bob Miniger as a defendant, Defendants filed a Suggestion of Death on January 10, 2020 notifying Plaintiff and the Court that Mr. Miniger had died. (Doc. 74). Federal Rule of Civil Procedure 25 provides that "[i]f a party dies . . . [a] motion for substitution may be made by any party . . . . If the motion is not made within 90 days after service of a statement noting death, the action by or against the decedent must be dismissed." Fed. R. Civ. P. 25(a)(1). Here, no motion was made within 90 days and as such the claims against Mr. Miniger are dismissed.

[2] This action was reassigned to me from Judge Karas on April 16, 2020, approximately three years after it was first commenced.

*generally* Doc. 225, "R&R"). The Report recommended that the case be dismissed with prejudice and that Plaintiff be assessed costs associated with the October 13, 2020 deposition. (*Id*. at 20).

On January 13, 2021, Plaintiff filed objections (the "Objections") to the Report (Doc. 237, "Pl. Obj.")[3] and on January 25, 2021, Defendants opposed Plaintiff's Objections (Doc. 239). Despite the Court's explicit directive that "[n]o reply will be permitted" (Doc. 235), Plaintiff filed a reply brief in further support of his Objections on February 9, 2021 (Doc. 243).

For the reasons that follow, the Court ADOPTS the Report in its entirety.

## STANDARD OF REVIEW

After a magistrate judge issues a report and recommendation, "any party may serve and file written objections to such proposed findings and recommendations" in the district court. 28 U.S.C. § 636(b)(1)(C). The district court "shall make a *de novo* determination to those portions of the report or specified proposed findings or recommendations to which objection is made." *Id*.; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015) ("If a party timely objects to any portion of a magistrate judge's report and recommendation, the district court must 'make a *de novo* determination of those portions of the report of specified proposed findings or recommendations to which objection is made.'" (quoting 28 U.S.C. § 636(b)(1))). Objections "must be specific and clearly aimed at particular findings in the magistrate judge's proposal." *Green v. Dep't of Educ. of City of N.Y.*, No. 18-CV-10817, 2020 WL 5814187, at *2 (S.D.N.Y. Sept. 30, 2020) (quoting *McDonough v. Astrue*, 672 F. Supp. 2d 542, 547 (S.D.N.Y.

---

[3] Plaintiff, prior to filing his Objections on January 13, 2021, filed a letter request for a pre-motion conference in anticipation of moving to "reject" the Report on December 24, 2020. (Doc. 229).Defendants filed opposition to Plaintiff's pre-motion conference request on December 31, 2020. (Doc. 233). By Order dated January 4, 2021, the Court directed Plaintiff to file his Objections by January 11, 2021. (Doc. 235). Plaintiff filed Objections on January 10, 2021 (Doc. 236) and then filed a "corrected" version of his Objections on January 13, 2021 (Doc. 237). Given Plaintiff's *pro se* status and Defendants' reliance on the late-filed Objections in their opposition, the Court relies on the "corrected" version of the Objections herein.

2009)); *Barratt v. Joie*, No. 96-CV-0324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002) ("Parties filing objections to recommendations are required to 'pinpoint specific portions of the report and recommendations to which [they] objec[t] . . . .'" (quoting *Camardo v. Gen. Motors Hourly-Rate Emps. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992))).

If, however, "the [objecting] party makes only frivolous, conclusory or general objections, or simply reiterates [his] original arguments, the Court reviews the report and recommendation only for clear error." *Velez v. DNF Assocs., LLC*, No. 19-CV-11138, 2020 WL 6946513, at *2 (S.D.N.Y. Nov. 25, 2020) (quoting *Chen v. New Trend Apparel, Inc*., 8 F. Supp. 3d 406, 416 (S.D.N.Y. 2014)); *see also Colliton v. Donnelly*, No. 07-CV-1922, 2009 WL 2850497, at *1 (S.D.N.Y. Aug. 28, 2009), *aff'd*, 399 F. App'x 619 (2d Cir. 2010) ("The vast majority of plaintiff's objections are patently frivolous and require no discussion."); *Brown v. Ebert*, No. 05-CV-5579, 2006 WL 3851152, at *2 (S.D.N.Y. Dec. 29, 2006) ("[W]here the objections are 'merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition,' the court reviews the report for clear error." (quoting *Gardine v. McGinnis*, No. 04-CV-1819, 2006 WL 3775963, at *4 (S.D.N.Y. Dec. 20, 2006))); *Barratt*, 2002 WL 335014, at *1 ("When a party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the [r]eport and [r]ecommendation only for clear error."). Thus, when a plaintiff does not "lodge[] any specific objections, the court [] review[s] the [report and recommendation] for clear error." *Petrovic v. Comm'r of Soc. Sec.*, No. 15-CV-2194, 2016 WL 6082038, at *2 (S.D.N.Y. Oct. 14, 2016).

## ANALYSIS

The Court finds that Plaintiff's Objections, *in toto*, are of a frivolous, conclusory, and general nature thus triggering only clear error review. Plaintiff simply has not identified any

specific and particular findings in the Report to which he objects sufficient to prompt a *de novo* review. *See, e.g., Barratt*, 2002 WL 335014, at *1 ("When a party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the [r]eport and [r]ecommendation only for clear error."). The Court, having carefully reviewed Judge Davison's thorough and well-reasoned Report, finds no clear error. Judge Davison's findings, recommendations, and conclusions are supported by his extensive and exhaustive review of the relevant events and filings in this action as well as applicable case law. Accordingly, the Court adopts the Report in its entirety.

Even assuming, however, that Plaintiff had properly identified specific and particular objections to the Report—which he has not—and thus a *de novo* standard of review applied, the Court would reach the same conclusions as those reached by Judge Davison.

The narrow question raised by Defendants' Rule 37 sanctions motion was whether the imposition of sanctions, including dismissal of Plaintiff's action, was appropriate based on Plaintiff's willful refusal to comply with court orders, including the refusal to appear at a court-ordered deposition on October 13, 2020. (*See generally* Doc. 202).[4] Defendants seek also the costs

---

[4] Defendants also moved for Rule 37 sanctions based on the lack of civility exhibited by Plaintiff in the course of this proceeding and Plaintiff's repeated use of sexually inappropriate and vulgar language in emails to defense counsel and documents filed publicly on the docket. (Doc. 202 at 19). Judge Davison found that this action should be dismissed based on Plaintiff's willful failure to comply with the court's orders and did not reach the question of whether sanctions should be imposed on this separate basis. (R&R at 19-20). Because the Court herein adopts the Report in its entirety and dismisses the action, this Court also does not reach the question of whether sanctions would be separately appropriate based on Plaintiff's use of unnecessarily crude and obscene language in communications with defense counsel and the Court. The Court notes, however, that nearly every one of Plaintiff's filings, including the Objections, are riddled with vulgar language and that such language is clearly and indisputably inappropriate. Plaintiff's use of salacious language serves no legitimate purpose, and, had Judge Davison imposed sanctions based on Plaintiff's repeated use of such language, the Court could easily conclude that sanctions were proper on that basis. *Leibovitz v. City of New York*, No. 15-CV-546, 2019 WL 4307305, at *5 (S.D.N.Y. Aug. 27, 2019), *adopted by* 2019 WL 4303343 (S.D.N.Y. Sept. 11, 2019) ("Plaintiff's repeated comments, deliberately made, are indefensible. He persisted in using foul and profane language after being told not to do so. This misconduct constitutes an additional ground for dismissal."); *Nelson v. Eaves*, 140 F. Supp. 2d

and expenses associated with the court-ordered deposition. The factual record related to Plaintiff's court-ordered deposition was explored at length in the Report (R&R at 1-12) and the conclusions reached therein are correct. Specifically, Judge Davison found that when evaluating the appropriateness of sanctions, including dismissal, courts consider four factors, including:

> (1) the willfulness of the non-compliant party or the reasons for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance.

(*Id.* at 13 (quoting *Agiwal v. Mid Is. Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009))). Furthermore, the sanction of dismissal with prejudice may only be used in "extreme situations, and then only when a court finds 'willfulness, bad faith, or any fault' by the non-compliant litigant," *Agiwal*, 555 F.3d at 302 (quoting *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir. 1990)), and "[d]ismissal of a *pro se* litigant's action may be appropriate 'so long as a warning has been given that non-compliance can result in dismissal,'" *id.* (quoting *Valentine v. Museum of Modern Art*, 29 F.3d 47, 50 (2d Cir. 1994)). Here, the Magistrate Judge's findings establish clearly that: (1) Plaintiff engaged in the type of bad faith, willful, and deliberate behavior sufficient to impose the extreme sanction of dismissal (R&R at 15 (establishing that "Plaintiff's failure to appear for his court-ordered deposition" occurred "after his extensive campaign to thwart or delay the deposition, and after he was repeatedly warned about the consequences of doing so;" and that "Plaintiff announced his unwillingness to submit to an oral deposition as early as June 8, 2020," that "Plaintiff's resistance to an oral deposition grew defiant," and that "[P]laintiff's own words and conduct [reflect] that [P]laintiff's failure to participate in the deposition was willful")); (2) no sanction short of dismissal would be effective (*id.* at 19 ("On this record, it is apparent that

---

319, 322 (S.D.N.Y. 2001) (dismissing action because, *inter alia*, plaintiff wrote "abusive, demeaning, and threatening letters . . . [which] reveal[] malice and an intent to harass").

any sanction short of dismissal would be ineffective" because "[P]laintiff will not obey court orders or comply with the rules, even after being warned of the consequences.")); (3) the period of non-compliance with the Court's orders was substantial (*id.* at 18 ("[P]laintiff announced his unwillingness to sit for an oral deposition as early as June 2020, and continued to resist the procedure even after [the Magistrate Judge] ordered the deposition and after [this Court] upheld the compulsion order in response to [P]laintiff's Rule 72 appeal. Thus, [P]laintiff's ultimate failure to appear for the court-directed deposition on October 13, 2020 was the culmination of months of heel-dragging resistance."); *see also* Doc. 142-1[5] at 12:17-19  (Plaintiff initially stated that he would appear for a deposition on February 6, 2020); Doc. 142 (declaring unilaterally, on July 15, 2020, that "[t]o the extent that the Defendants contend that they still want to conduct deposition [sic], the Plaintiff is available to participate into Depositions *by written questions*" (emphasis added)); Doc. 144 at 5 (stating, on July 17, 2020, that "as far as this matter is concerned, [discovery] is done."); and (4) Plaintiff was warned that his continued non-compliance could result in dismissal of the action at least three times (R&R at 19 ("[B]y October 13, 2020, [P]laintiff had been unambiguously warned three times over the course of a month, that his case could be dismissed if he did not appear for his deposition.")). Judge Davison considered and analyzed the four factors relevant to the inquiry of whether sanctions, including dismissal, are appropriate, and his ultimate conclusion that dismissal is the proper sanction is supported both by the record and caselaw.

Additionally, it was appropriate that Plaintiff be assessed with costs related to the October 13, 2020 deposition because an award of expenses and attorney's fees is mandatory in this

[5] The document filed via ECF at 142-1 is a Transcript of the January 29, 2020 telephonic conference before Judge Davison. The Court understands that references in the Report to "Dkt. 141-1" (R&R at 2-3), were meant to refer to document 142-1.

situation. (*See id*. at 18). Specifically, Federal Rules of Civil Procedure 37(b)(2)(C) and 37(d)(3) both provide that "the court *must* order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C), 37(d)(3) (emphasis added). Here, the Magistrate Judge established clearly that Plaintiff's failure to obey the Court's orders was not justified and the imposition of fees was not unjust. (R&R at at 15-19 (finding that Plaintiff's reasons for non-compliance with the court-ordered deposition were not justified and that because this is a fee paid case, Plaintiff is not indigent)).

Accordingly, even if this Court engaged in a *de novo* review, the Court's findings, analysis, and conclusions would be the same as those reached by Judge Davison: The Court would find that the sanction of dismissal is wholly warranted. *See, e.g., Valentine*, 29 F.3d at 50 ("The record in this case reveals [Plaintiff's] sustained and willful intransigence in the face of repeated and explicit warnings from the court that the refusal to comply with court orders to appear for his deposition would result in the dismissal of his action. We see no abuse of discretion in the court's imposition of that sanction in the circumstances of the present case.").

The Objections suggest that Judge Davison failed to address Plaintiff's Rule 37 sanctions motion regarding Defendants' failure to appear for their depositions in an attempt to deflect from and/or defend Plaintiff's own failures to comply with court orders related to his deposition. (*See* Pl. Obj. at 3-4 ("[T]he Muslim Plaintiff previously sought Rule 37 sanctions against the Islamophobic bigot Defendants . . . [because] the Islamophobic bigot Defendants deliberately failed to appear for their deposition. . . . The court should take Notice that the only sanction the Muslim Plaintiff sought in his . . . Motion was an Order requiring the Islamophobic bigot Defendants to appear at their deposition, but without any justification Magistrate Judge Davison

IGNORED and/or DENIED the Muslim Plaintiff's application, in spite of the fact that the Muslim Plaintiff had the right to Depose the Islamophobic bigot Defendants.")). Plaintiff's efforts, in this regard, to distract and muddy the clear waters are in no way persuasive or effective. The timeline of relevant events concerning Defendants' depositions unmasks Plaintiff's true intentions—to mirror Defendants' request in an effort to blunt any adverse ruling here.

Judge Davison held a telephonic conference on January 29, 2020 and addressed a number of discovery issues, including Defendants' depositions. (*See generally* Doc. 142-1). At that conference, Plaintiff stated on the record that he was reluctant to sit for an oral deposition because his "ability to handle things orally . . . [was] very limited." (*Id*. at 10:20-23). Judge Davison noted that it "doesn't really sound like something that relieves you of the obligation to come to court or to participate in a deposition." (*Id*. at 10:24-11:1). After discussing potential deposition dates, Plaintiff stated that he would appear for a deposition on February 6, 2020. (*Id*. at 12:17-19 ("THE COURT: Mr. Kamden-Ouaffo, you're indicating that you will appear on February 6th? MR. KAMDEN-OUAFFO: Yes, your honor.")). Judge Davison also issued an order after the January 29, 2020 conference which addressed Plaintiff's ability to take depositions of certain executives of Balchem. The Magistrate Judge ordered that Plaintiff, as he requested (*see* Doc. 82 at 3), could take the depositions of certain senior executives of Balchem by written questions pursuant to Federal Rule of Civil Procedure 31[6] (*id.* at 3-4).

---

[6] Plaintiff has argued that the discovery ruling regarding the permissible method of deposing Balchem's senior executives applied to Plaintiff—*i.e.* Defendants could only take Plaintiff's deposition via written questions. (Doc. 174 at 1-2). However, not only has the Court already explicitly rejected this argument (Doc. 184 at 3), but the circumstances regarding Plaintiff's request to depose Balchem's senior executives bear little resemblance to Defendants' attempts to depose Plaintiff. First, Plaintiff stated his intention to take certain depositions by written question (Doc. 82 at 3); and second, Judge Davison found that "depositions of senior executives are ordinarily disfavored as they may cause business disruption or represent a form of harassment," (*id.* (citing *Gen. Star Indem. Co. v. Platinum Indem., Ltd*., 210 F.R.D. 80, 83 (S.D.N.Y. 2002))), and thus deposition by written examination as to Balchem's senior executives was appropriate (*id.*). Judge Davison considered carefully whether Plaintiff should be relieved of his obligation

Plaintiff did not appear for a deposition on February 6, 2020 and notified defense counsel that he would no longer be participating in discovery. (Doc. 83). The issue then of Defendants' depositions by written questions fell by the wayside. Thereafter, the issue which occupied an inordinate amount of the Court's time over many months was Plaintiff's failure to comply with Defendants' lawful discovery demands, culminating ultimately in Plaintiff's failure to appear for his October 13, 2020 court-ordered deposition. Undoubtedly, Plaintiff had a right to seek discovery from Defendants. Indeed, had Plaintiff merely sat for his deposition, discovery certainly could have proceeded in the normal course. Plaintiff's persistent refusal to engage in discovery or appear for a deposition, which was initially scheduled for February 6, 2020, indicates only that the Magistrate Judge's focus was securing Plaintiff's cooperation, not that the Magistrate Judge ignored Plaintiff's discovery demands.

It also appears to the Court that Plaintiff is employing the strategy of making identical requests as Defendants' requests for relief. That is to say, if Defendants are making a Rule 37 sanctions motion seeking to compel Plaintiff's deposition or dismiss the Complaint, Plaintiff is going to file a Rule 37 sanctions motion seeking to compel Defendants' depositions or strike their Answer. The disingenuousness of the approach is reflected in its timing. Had Plaintiff a true discovery issue, he surely would have raised it during the many months after the Court gave Plaintiff permission to take certain deposition by written questions.[7] Instead, on December 30,

---

of sitting for an oral deposition and found that he had failed to make the requisite showing. (R&R at 15-16 (finding that "plaintiff's most plausible and substantial reason for his reluctance to participate in an oral deposition is his statement that he 'is a therapy patient'" and noting that while "plaintiff never asked the Court for any relief on this basis, I have given careful consideration to whether plaintiff would have been entitled to a protective order barring an oral deposition on the basis of his mental health. The short answer is he would not.")).

[7] Plaintiff's Rule 37 motions for sanctions, apart from the December 30, 2020 motion for sanctions discussed *infra*, addressed issues unrelated to Defendants' deposition including Defendants' failure to answer Plaintiff's requests for admission, alleged failure to preserve electronically stored information, and

2020, seven days after the Report was issued, Plaintiff filed an "APPLICATION FOR PERMISSION TO FILE A MOTION FOR SANCTIONS PURS. TO THE FED.R.CIV.P. RULE 37(d) BECAUSE OF THE DEFEDNATS' [sic] DELIBERATE FAILURE/REFUSAL TO APPEAR FOR THEIR COURT-ORDERED DEPOSITION NOTICED BY THE MUSLUIM PLAINTIFF TO TAKE PLACE ON 2/27-28/21 AND FOR ANY OTHER SANCTIONS AS MAY BE APPLICABLE." (Doc. 232). Plaintiff's filing bespeaks the reality of the purpose of such an application. Whether or not Plaintiff has obtained all of the discovery he sought from Defendants is not relevant to adjudicating Defendants' Rule 37 sanctions motion; and it is now beside the point. The imposition of Rule 37 sanctions including dismissal of this action and Defendants' right to seek costs is based exclusively on Plaintiff's willful and deliberate failure to comply with the court's orders including his failure to appear at the court-ordered October 13, 2020 deposition. Had Plaintiff a real issue concerning Defendants' depositions, that application would not have been filed seven days after the Report was served.

The Court notes that the decision to impose the sanction of dismissal is untethered to the underlying merits of Plaintiff's claims. Plaintiff's conduct in refusing to comply with the court's orders has resulted in the dismissal of this action prior to reaching that stage of the litigation.[8]

---

use of vulgar language. (*See generally* Docs. 145, 150, 167).

[8] It bears mentioning that Plaintiff states in the Objections that Judge Karas found that "Defendants plausibly, maliciously, and unlawfully possibly were '*acting in their dislike, disdain, or hatred of the Plaintiff's Muslim creed*' against the Muslim Plaintiff because of the Plaintiff's Muslim religion/creed and the Practice thereof at work . . . ." (Pl. Obj. at 1 (emphasis in original)). That quotation is a gross mischaracterization of the determinations made in Judge Karas's motion to dismiss decision. (*See* Doc. 48 at 19). Plaintiff is merely quoting his allegations, which appear in the decision. Regarding those allegations, Judge Karas held, as it related to Plaintiff's tortious interference with business relations claim, that "[c]onstruing the Second Amended Complaint liberally," Plaintiff alleged facts sufficient to suggest plausibly that Defendants acted outside the scope of their employment. (*Id*. at 18-19). Despite Plaintiff's suggestion otherwise, no finding was made as to the veracity of the allegation.

10

Judge Davison handled this matter with exceptional patience, wisdom, deftness, professionalism, and care. Given Plaintiff's antagonistic conduct toward Defendants, defense counsel, and the Magistrate Judge, Judge Davison's dogged efforts to address the unending barrage of Plaintiff's filings in this action[9] and devoted attempts to secure Plaintiff's cooperation is a model of judicial temperament and restraint. This Plaintiff, by his own hand and his own failure to comply with the lawful orders of the Magistrate Judge, has converted his case before this Court into an ugly display of a seemingly unchecked deluge of vulgar, demeaning, and inappropriate tirades and comments—each a part of Plaintiff's many applications for relief. A simple review of the nearly 100 entries on the docket filed by Plaintiff in the last year makes this abundantly clear. Indeed, the myriad ill-founded applications, requests, and decrees are now all being terminated. Plaintiff has no one to blame for the dismissal of this action except himself. Because the Court adopts the Report in its entirety, including the recommendation that this action be dismissed with prejudice, the Court need not and does not address the other pending items on the docket.[10]

---

[9] A review of the docket demonstrates that between January 14, 2020 (the date upon which the action was referred to Judge Davison for general pretrial supervision) and the date of this writing, Plaintiff filed approximately 96 documents via ECF for the Court's review. Needless to say, Plaintiff's filings have caused a substantial burden on this Court's and Judge Davison's docket.

[10] While the Court need not address the other pending items on the docket, the Court nonetheless denies Plaintiff's motion for reconsideration of its denial of Plaintiff's Rule 72 application, which denied Plaintiff's request that the Court modify or reject Judge Davison's decision that Plaintiff appear for a deposition. (Doc. 189). Pursuant to Local Civil Rule 6.3, a motion for reconsideration should only be granted where the movant points to "an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Henderson v. Metro. Bank & Tr. Co*., 502 F. Supp. 2d 372, 375-76 (S.D.N.Y. 2007) (quoting *Doe v. New York City Dep't of Social Servs*., 709 F.2d 782, 789 (2d Cir. 1983)). "A motion to reconsider is not intended to give the losing party an opportunity to . . . introduce arguments . . . that could have been presented, but were not, in opposing the original motion." *Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petroleum*, 948 F.2d 111, 115 (2d Cir. 1991). Plaintiff's reconsideration motion fails to satisfy this high burden.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court ADOPTS the Report in its entirety and GRANTS Defendants' motion for the sanction of dismissal. The Complaint is DISMISSED with prejudice.

Defendants are directed to submit an affidavit with proof in admissible form of the reasonable expenses incurred, if any, with the October 13, 2020 deposition session and the preparation associated therewith within thirty days of the entry of this Order. Plaintiff's opposition, if any, shall be filed within fourteen days thereafter.

Furthermore, the Clerk of the Court is directed to terminate the pending items on the docket (Docs. 101, 102, 135, 145, 148, 150, 151, 167, 185, 189, 201, 240).

Finally, the Clerk of Court is directed to mail a copy of this Order to Plaintiff at the address provided on the docket.

**SO ORDERED:**

Dated:  White Plains, New York
          March 23, 2021

Philip M. Halpern
United States District Judge